**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JULIAN ESPINOZA,

      Defendant - Appellant.

No. 09-8102
(D.C. No. 1:08-CR-00170-WFD-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA, KELLY**, and **GORSUCH**, Circuit Judges.[**]

Defendant-Appellant Julian Espinoza appeals his conviction for receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). He contends that the government failed to prove the jurisdictional element that an image traveled across state lines. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Background

On July 24, 2008, the government charged Mr. Espinoza with one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). 1 R. Doc. 11. At trial, the government presented evidence that Mr. Espinoza received and possessed child pornography using "Limewire," a peer-to-peer file sharing software program which allows users to search for, download, and share various types of files, including videos and pictures, over the Internet with other Limewire users. 3 R. at 322-23. Former Wyoming Division of Criminal Investigation (DCI) Special Agent Flint Waters testified that on May 29, 2008, he located a computer in Cheyenne, Wyoming that was offering child pornography files for download via Limewire. 3 R. at 389-94. Agent Waters downloaded two child pornography files from the computer, 3 R. at 421-22, captured the suspect computer's Internet protocol (IP) address, and wrote an administrative subpoena to Bresnan Communications, the Internet service provider, requesting the name and address of the account holder. 3 R. at 427. Bresnan Communications informed Agent Waters that the IP address belonged to Mr. Espinoza. 3 R. at 435.

After obtaining a search warrant authorizing a search of Mr. Espinoza's residence, Agent Waters and other law enforcement personnel, including DCI Special Agents Randy Huff and Bruce Dexter, went to Mr. Espinoza's residence

and seized a laptop computer from his bedroom.  3 R. at 435-41, 652-54.  Agent Huff testified that while conducting a preview of the contents on the laptop with forensic software, he discovered both still and video images of child pornography.  3 R. at 659-60.  Agent Dexter testified that after conducting a forensic examination of the laptop, he found 45 images of child pornography—44 digital movies and 1 digital photograph—on the laptop's hard drive.  3 R. at 546.

A jury found Mr. Espinoza guilty of both possession and receipt of child pornography.  1 R. Doc. 79.  At the sentencing hearing on December 2, 2009, however, the court granted the government's motion to dismiss the possession count on double jeopardy grounds.  3 R. at 992-93.  The court sentenced Mr. Espinoza to 240 months imprisonment, a $500 fine, a life term of supervised release, and a $100 special assessment.  1 R. Doc. 101.  Mr. Espinoza filed a timely notice of appeal on December 10, 2009.  1 R. Doc. 102.

On appeal, Mr. Espinoza argues that his receipt conviction should be overturned because the government failed to prove the jurisdictional element of the offense, i.e. the government failed to prove that the images crossed state lines.  Aplt. Br. at 8.  We review the sufficiency of evidence to support a jury's verdict de novo.  See United States v. Vigil, 523 F.3d 1258, 1262 (10th Cir. 2008) (citing United States v. Burkley, 513 F.3d 1183, 1188 (10th Cir. 2008)).  We view the evidence and its reasonable inferences in the light most favorable to the government to determine whether a rational jury could find the defendant guilty

- 3 -

beyond a reasonable doubt.  Id. (citing Burkley, 513 F.3d at 1188).


## Discussion

Title 18 U.S.C. § 2252A(a)(2)(A) prohibits any person from knowingly receiving "any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . ."  18 U.S.C. § 2252A(a)(2)(A).[1]  To prove the jurisdictional requirement of this statute, the government must present sufficient evidence that the proscribed images moved across state lines.  United States v. Schaefer, 501 F.3d 1197, 1201 (10th Cir. 2007).[2]  In Schaefer, we held that proof of the use of the Internet, standing alone, is not sufficient to prove movement across state lines.  See id. at 1205. We explained that "[m]ost Internet cases . . . include testimony regarding the location of the servers accessed by defendant, or some other evidence that reveals the interstate character of the particular transmissions at issue."  Id. at 1208 (Tymkovich, J., concurring) (citing United States v. Wollett, 164 F. App'x 672

---

[1] We note that this version of the statute was effective from July 27, 2006 to October 7, 2008 and that Congress has since amended the statute.

[2] In Schaefer, the defendant was convicted of receipt and possession of child pornography under 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B).  Schaefer, 501 F.3d at 1198.  The language of the jurisdictional provisions in those statutes is nearly identical to the language in the version of 18 U.S.C. § 2252A(a)(2)(A) that Mr. Espinoza was convicted under.  Compare Schaefer, 501 F.3d at 1200 ("has been mailed, or has been shipped or transported in interstate or foreign commerce") with 18 U.S.C. § 2252A(a)(2)(A) ("has been mailed, or shipped or transported in interstate or foreign commerce").

(10th Cir. 2006)); see also United States v. Kimler, 335 F.3d 1132, 1135 (10th

Cir. 2003) (explaining that images traveled across state lines through servers in

California and Internet service provider in Missouri before reaching home

computer in Kansas); United States v. Wilson, 182 F.3d 737, 744 & n.4 (10th Cir.

1999) (describing how data "necessarily would have traveled in interstate

commerce from [bulletin board server in] California to [computer in] Colorado

via telephone line"); United States v. Simpson, 152 F.3d 1241, 1245 (10th Cir.

1998) (offering evidence that images were downloaded from a web site in Boston

to a computer in Oklahoma). "Typically, the evidence of interstate commerce . . .

can be gleaned from the record." Schaefer, 501 F.3d at 1208 (Tymkovich, J.,

concurring).

The government relies on the testimony of two witnesses and circumstantial

evidence from a video played at trial to show that it offered sufficient evidence

for a reasonable jury to conclude that the images Mr. Espinoza received moved

across state lines. Agent Waters testified that he had seen one of the

pornographic images in previous investigations and stated that he did not believe

that the children in the image were from Wyoming.[3]  3 R. at 425.  When asked

whether the image would have had to cross a state line to get to a computer in

---

[3] Mr. Espinoza objected to much of Agent Waters' testimony on several
grounds, including Fed. R. Evid. 701, 702, 703, and lack of foundation.  He also
made similar objections concerning the testimony of Agent Dexter.  These
objections have not been urged on appeal, and we do not consider them further.

Wyoming, Agent Waters testified: "I can't think of a circumstance where this image, in as wide as circulation as it is on the internet, didn't have to cross a state line to end up on a computer, but I can't say that I can think of every possible scenario." 3 R. at 426-27. The government concedes that if this had been the only evidence of movement across state lines, then "the Defendant's argument might have some merit," but argues that the testimony of Agent Dexter was sufficient to establish the interstate requirement. Aplee. Br. at 14.

Agent Dexter noted the use of foreign language in a video played at trial, 3 R. at 588, and testified that he had seen certain images in previous cases. 3 R. at 589. Indeed, the video shows an older man speaking in a foreign language while a young boy is seated at a desk reading from a book written in a foreign language. Agent Dexter testified that based on his training and experience, the children in the images were not Wyoming children, 3 R. at 589-90, and that the movies were not made in Wyoming. 3 R. at 590-91. In closing argument, the prosecutor argued that the content of the video played at trial—foreign language and Cyrillic letters that appeared in a book—was circumstantial evidence that the images were not made in Wyoming. 3 R. at 853. The government contends that the evidence shows that the images were manufactured outside of Wyoming, and "[t]hus, the images had to have traveled across a state line, thereby satisfying the interstate commerce requirement of the crime." Aplee. Br. at 18.

In a factually similar case, we held that evidence that an image was

distributed out of South America was sufficient for a jury to conclude that the image had moved across state lines. United States v. Swenson 335 F. App'x 751, 753 (10th Cir. 2009).[4]  In Swenson, the defendant was convicted of, among other things, attempted distribution of child pornography via Limewire. Id. at 752.  At trial, Special Agent Flint Waters (the same witness from the present case) testified that one image the defendant attempted to distribute bore the words "Photo by Carl" and was "consistent with the Carl series that's being distributed out of South America" that he was familiar with from other investigations. Id. at 753.  On appeal, we held that "[a] reasonable jury could (even if it need not) conclude from this evidence that, for the image to wend its way from South America to Wyoming, it had traveled in interstate or foreign commerce." Id. Similarly, viewing the evidence and its inferences in the light most favorable to the government, we hold that a reasonable jury could conclude that the images here originated outside of Wyoming and therefore, must have traveled across state lines to end up in Wyoming.

Mr. Espinoza argues that his conviction should be reversed under our holding in Schaefer.  In Schaefer, we reversed convictions for receipt and possession of child pornography because the government's only evidence of interstate movement was that the defendant used the Internet, and we "decline[d]

---

[4] Unpublished decisions are not binding precedent, but may be cited for persuasive value.  See 10th Cir. R. 32.1(A).

to assume that Internet use automatically equates with a movement across state lines." See Schaefer, 501 F.3d at 1205. In dicta, we noted that even if we were to assume that the images on CDs in the defendant's possession originated outside of the state, the government failed to meet the interstate requirement because it offered no proof as to how the images had moved across state lines. Id. at 1206 (citing Wilson, 182 F.3d at 744). We have since held that "Schaefer is limited to its facts—the government's say so was not enough to prove that the Internet operates in interstate commerce, no matter how obvious." Vigil, 523 F.3d at 1266 (citing Schaefer, 501 F.3d at 1207-08 (Tymkovich, J., concurring)).

Here, the government has offered more than mere Internet usage to show that the images moved across state lines. Namely, the government offered testimony from witnesses involved in the interdiction of child pornography that the children in the images were not from Wyoming and that the images had probably traveled in interstate commerce. See 3 R. 426-27, 589-91. Moreover, in one of the videos, an adult spoke a foreign language as a child read from a book written in a foreign language. Another clip shows the same child in the same surroundings engaging in sexual activity with another child. Viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom, we conclude that a reasonable jury could find that the clip was made outside of the United States and that "to wend its way [from out of state] to Wyoming," it must have traveled across state lines. Swenson, 335 F.

App'x at 753.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge